**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VALENCIA PEREZ, | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-150 (JCH) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT DEPT. OF | : | SEPTEMBER 4, 2013 |
| CORRECTION PAROLE DIVISION, et al., | : | |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS (Doc. No. 15) AND MOTION TO STAY
DISCOVERY (Doc. No. 36)**

**I.     INTRODUCTION**

Plaintiff Valencia Perez brings this employment discrimination action against the State of Connecticut Department of Correction ("DOC") and Department of Administrative Services ("DAS") as well as against Michael Cosgrove, individually and in his official capacity as a DAS employee. Perez's Complaint (Doc. No. 1) alleges six counts of unlawful race- and ancestry-based discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e et seq. (Counts One and Three); the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60(a) and 46a-70 (Counts Two, Four, and Five); and section 1983 of Title 42 of the United States Code (Count Six).

Defendants[1] filed this Motion to Dismiss (Doc. No. 15) for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim. Pending before the court is also defendant DAS's Motion to Stay Discovery. For the reasons below, the court **grants in part** and **denies in part** defendants' Motion to Dismiss and **denies**, as moot, DAS's Motion to Stay Discovery.

---

[1] Defendants' Motion to Dismiss was filed by DOC, DAS, and Cosgrove "in his official capacity." Cosgrove filed a separate Notice to the Court "in his individual capacity" that "he adopts and incorporates by reference the Motion to Dismiss and accompanying Memorandum of Law in Support of Motion to Dismiss." See Doc. No. 17.

1

## II.     BACKGROUND

Perez joined DOC as a Parole Officer Aide in July 2006 and has been denied promotion to the position of Parole Officer I from 2008 to the present. See Compl. at ¶ 18. In 2008, DAS allegedly informed Perez that she required an additional five months of case management experience to meet the six-year requirement for the Parole Officer I position, and that her Parole Officer Aide experience counted toward that requirement. Id. at ¶ 25. However, in November 2010, when Perez applied for a posted Parole Officer I opening, she was informed that her Parole Aide experience no longer counted toward the required case management experience for the Parole Officer I position. Id. at ¶¶ 19, 26.[2]

In March 2011, Perez was denied promotion by DOC's Human Resource Specialist, Human Resource Manager, and Director, all of whom are white non-Hispanic. Id. at ¶ 22. In July 2011, Cosgrove, who was Human Resources Consultant at DAS, denied Perez inclusion on the examination list for the Parole Officer I position, despite her experience and education, which qualified her to be placed on that list. Id. at ¶ 23. DOC stated that it did not promote her because she lacked the required experience and was not on the examination list. Id. at ¶ 24.

Perez has a bachelor's degree and alleges that at the time of the examination, she had the required six years of case management experience, including over four years as Parole Aide at DOC and approximately one year with an outside organization. Id. at ¶¶ 27, 30. She also alleges that, since 2007, DOC has promoted to Parole Officer

---

[2] The Complaint states that this information was conveyed to Perez "when plaintiff applied for the Parole Officer I position in November 2011." See Compl. at ¶ 26. However, the court takes the year to be a typo, based on the overall timeline and other clear statements in the Complaint that she applied for the position in November 2010. See id. at ¶¶ 19, 27.

I at least three white non-Hispanic Parole Officer Aides who were not on the examination list, and who had less experience and no college degree. Id. at ¶ 29. Unlike other Parole Aides, some of whom had less education and case management experience, Perez was not promoted to Parole Officer Trainee or any other trainee program to gain additional experience. Id. at ¶¶ 31-33.

In May 2011, after Perez contacted DOC Commissioner Leo Arnone, among others, and no corrective action was taken, she filed charges with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Id. at ¶¶ 34-37, 40. Perez originally filed her CHRO charge only against DOC, on the basis that DOC denied her promotion to Parole Officer I in March 2011. See CHRO Compl. (Doc. No. 37-1). Only later—in September 2012—did she amend her CHRO complaint to include DAS as an additional respondent. See Am. CHRO Compl. (Doc. No. 37-1). In the Amended CHRO Complaint, Perez charged DAS with discrimination on the basis that Cosgrove denied her inclusion on the examination list in June 2009. See id. at ¶ 3 (adding paragraphs 19 and 20). Perez received a Release of Jurisdiction from the CHRO and a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") in December 2012 and January 2013, respectively. See Compl. at ¶ 41.

### III. STANDARD OF REVIEW

#### A. Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate the case. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008). Normally, on a 12(b)(1) motion, the burden of proof rests with the plaintiff. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). However, where a

3

defendant official or governmental entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit. Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 239 (2d Cir. 2006).[3]

    B.    Service of Process

Sufficiency of service is a precondition of the court's exercise of personal jurisdiction over a party. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Thus, upon a Rule 12(b)(2) motion, courts consider insufficient service of process as an interrelated ground on which to dismiss a case for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2) and 12(b)(5); Davis v. Mara, 587 F. Supp. 2d 422, 424 (D. Conn. 2008); 5B Charles Alan Wright et al., Federal Practice and Procedure § 1353 (3d ed. 2013) ("Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion." (footnote omitted)).

Where lack of personal jurisdiction is alleged in a Rule 12(b)(2) motion to dismiss, it falls to the plaintiff to prove that the court has jurisdiction over the defendant.

---

[3] The Supreme Court has yet to decide whether the Eleventh Amendment is, in fact, a question of subject matter jurisdiction. See Woods, 466 F.3d at 238 (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391, 118 S. Ct. 2047, 2054, 141 L. Ed. 2d 364 (1998)). Like subject matter jurisdiction, Eleventh Amendment immunity may be raised by the court sua sponte at any time, including on appeal. Id. However, unlike subject matter jurisdiction, such immunity need not be raised by the court, and may be waived by the governmental entity being sued. Id.

Met Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). "Where a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001). "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendants." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2008) (internal citations and quotation marks omitted). "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

    C.    <u>Failure to State a Claim</u>

A case is properly dismissed under Rule 12(b)(6) if the Complaint fails to allege facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

5

(2009). As articulated by the Supreme Court in Iqbal and Twombly, the standard for dismissal on a 12(b)(6) motion reflects two working principles. See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013). First, the court's customary acceptance of all allegations in a complaint does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Hence, to survive a motion to dismiss, the Complaint must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. Second, assuming the truth of all well-pleaded factual allegations, and drawing all reasonable inferences in the plaintiff's favor, the district court must determine whether these allegations and inferences plausibly entitle the plaintiff to relief—that is, whether the complaint shows "more than a sheer possibility that a defendant has acted unlawfully." Id. This task is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

**IV.  DISCUSSION**

Defendants move the court to dismiss various counts of Perez's Complaint on various grounds:  (1) the Eleventh Amendment bars suit against Cosgrove in his official capacity (part of Count Six) and suit in federal court against DOC and DAS for CFEPA violations (Counts Two, Four, and Five), see Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 15-1) at 6-12; (2) with respect to Perez's Title VII claims against DAS (part of Counts One and Three), Perez's CHRO Complaint against DAS was untimely, and DAS is not her employer, see id. at 12-17; and (3) with respect to all counts against DOC and DAS, service was inadequate to confer personal jurisdiction, see id. at 18-20. Defendants also move the court to strike Perez's jury demand on the ground that her Title VII claims do not entitle her to a jury trial. See id. at 17-18.

6

A.  Eleventh Amendment Immunity

"The Eleventh Amendment, with few exceptions, bars federal courts from entertaining suits brought by a private party against a state in its own name." Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) (citing Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  Generally, absent a state's consent, or a valid and express abrogation of Eleventh Amendment immunity by Congress, this court lacks authority to adjudicate claims for monetary relief against the state, including any agency or department of the state.  See CSX Transp., Inc. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 95 (2d Cir. 2002); Auguste v. Dep't of Corr., 424 F. Supp. 2d 363, 367 (D. Conn. 2006) (citing Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982)).

1.  Section 1983 Claim Against Cosgrove

Count Six of the Complaint seeks damages against Cosgrove individually and in his official capacity as a DAS employee.  In a section 1983 suit against a state official, entitlement to Eleventh Amendment immunity depends on the capacity in which the official is sued.  See Hafer v. Melo, 502 U.S. 21, 31 (1991); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Ying Jing Gan, 996 F.2d at 529.  "Accordingly, suits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment." Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000).

The Supreme Court has held that section 1983 did not abrogate states' Eleventh Amendment immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66

(1989); Quern v. Jordan, 440 U.S. 332, 337-45 (1979). Nor has Connecticut waived immunity for section 1983 actions brought against state officials in their official capacity. See Sullins v. Rodriguez, 281 Conn. 128, 138-41 (2007).[4] Hence, Count Six must be dismissed to the extent that Perez proceeds against Cosgrove in his official capacity.

Perez, however, is also suing Cosgrove individually. Unlike the bar on suit against Cosgrove in his official capacity, the personal defenses of absolute and qualified immunity potentially available to Cosgrove depend not only on his status as a state official, but also on the nature of the function performed. Ying Jang Gan, 996 F.2d at 530. That issue has not been briefed. Defendants argue only that the Eleventh Amendment bars suit against Cosgrove in his official capacity. See Defs.' Mem. at 8. They are correct in that assertion, and the section 1983 claim is accordingly dismissed to that precise extent. Count Six survives the present Motion, however, to the extent that Perez's section 1983 claim is properly pleaded against Cosgrove in his individual capacity.[5]

---

[4] Perez cites to Magistrate Judge Martinez's Recommended Ruling in a pending case in this District as evidence of Connecticut's consent to damages actions against state officials. See Pl.'s Opp'n (Doc. No. 28) at 7-8 (citing Daniels v. Arnone, No. 3:12-CV-93 (RNC) (D. Conn. Jan. 19, 2012) (Doc. No. 27)). The claim for monetary relief in Daniels, however, is pursuant to Title VII and is thus inapt to Perez's section 1983 claim against Cosgrove for two reasons. First, unlike section 1983, Title VII abrogated states' Eleventh Amendment immunity to suit in federal court. See Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 729 (2003); Fitzpatrick v. Bitzer, 427 U.S. 445, 453-57 (1976). Second, Title VII claims against the state may be brought only against state employers, not against state officials, whether in their individual or official capacity. Hence, in Daniels, Magistrate Judge Martinez denied the defendant's motion to dismiss because, in liberally construing the pro se plaintiff's submissions, she reasonably inferred that the plaintiff intended to sue, not Commissioner Arnone, but DOC, the plaintiff's employer and the subject of the EEOC right-to-sue letter. See Daniels at 4-5.

[5] It bears emphasizing that the court's reserving judgment on Perez's section 1983 claim against Cosgrove in his individual capacity does not reflect any view of the merits. Allowing the claim to go forward at this stage indicates only the inappropriateness of deciding Cosgrove's entitlement to assert absolute or qualified immunity based on his function at DAS without any briefing on the issue.

### 2. CFEPA Claims Against DOC and DAS

Defendants argue that the Eleventh Amendment likewise bars CFEPA actions in federal court against DOC and DAS. See Defs.' Mem. at 8-12. Under CFEPA, Connecticut has consented to suit in Connecticut superior court. See Conn. Gen. Stat. §§ 46a-99 and 46a-100. However, "[a] State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." Pennhurst, 465 U.S. at 99. Consent to federal jurisdiction requires a clear declaration of intent, which will not be inferred from a state's consent to suit in its own courts. See id. at 100 n.9. Nothing in the Connecticut General Statutes conveys the type of express waiver of Eleventh Amendment immunity to federal jurisdiction over CFEPA claims required under federal constitutional law. See Lyon v. Jones, 168 F. Supp. 2d 1, 6 (D. Conn. 2001).[6]

Hence, Counts Two, Four, and Five of Perez's Complaint must also be dismissed on the ground that the Eleventh Amendment bars federal courts from adjudicating CFEPA claims against DOC and DAS.

---

[6] The question of whether Connecticut has consented to federal suit for CFEPA violations is scarcely a matter of first impression in this District. "[W]hether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law." Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 623 (2002). Although the Second Circuit has not authoritatively spoken, numerous district courts—including this one—have uniformly and repeatedly answered the question in the negative. See, e.g., Lee v. Dep't of Children & Families, 3:11CV1910 AWT, 2013 WL 1633048, at *6 (D. Conn. Apr. 15, 2013); Wagner v. Connecticut Dep't of Correction, 599 F. Supp. 2d 229, 237 (D. Conn. 2009); Mulero v. Connecticut, Dep't of Educ., 253 F.R.D. 33, 38 (D. Conn. 2008); Ozenne v. Univ. of Connecticut Health Care, 292 F. Supp. 2d 425, 432 (D. Conn. 2003); Lyon, 168 F. Supp. 2d at 6; Garris v. Dep't of Corr., 170 F. Supp. 2d 182, 187 (D. Conn. 2001).

Perez's lone citation to Magistrate Judge Martinez's Recommended Ruling in Daniels is not to the contrary. The abrogation by Congress of Eleventh Amendment immunity to suit in federal court for claims under Title VII in no way demonstrates Connecticut's consent to federal jurisdiction over state-law claims under CFEPA.

B.  Title VII Claims Against DAS

Perez has alleged, in addition to the state law claims of discrimination against DOC and DAS under CFEPA, analogous federal-law claims under Title VII (Counts One and Three), over which the court's jurisdiction is clear. Defendants argue that the court should dismiss Perez's Title VII claims against DAS on two distinct grounds: (1) Perez's CHRO complaint against DAS was untimely; and (2) DAS is not her employer.

1.  Perez's Title VII Claims Against DAS Are Untimely

Filing a timely charge of discrimination with the EEOC is a precondition for bringing a subsequent Title VII action in federal court. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 749; Francis v. City of New York, 235 F.3d 763, 766-67 (2d Cir. 2000). Where, as in the present case, a plaintiff pursues administrative remedies through a state agency such as CHRO, the usual 180-day period in which to file a charge of discrimination with the EEOC is extended to 300 days from the date of the alleged discriminatory practice or thirty days from the end of the state administrative proceeding, whichever is earlier. See 42 U.S.C. § 2000e-5(e)(1). A Title VII claim is time-barred if it is not filed within these statutory time limits. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).

On May 24, 2011, Perez filed her charge against DOC with the CHRO based on being denied promotion to Parole Officer I on March 24, 2011. See CHRO Compl. at ¶ 7. On September 4, 2012, she amended her CHRO complaint to include DAS as an additional respondent, alleging that Cosgrove, a DAS Human Resources Consultant, had denied her inclusion on the examination list in June 2009. See Am. CHRO Compl. at ¶ 3. According to Perez, "DOC serves as an agent of DAS and vice versa." Pl.'s Opp'n at 10. For purposes of determining whether Perez's charge against DAS was

timely, however, it does not matter what the precise relationship between the two agencies is with respect to promotion. Even had Perez included her charge against DAS in May 2011, the charge would have been untimely, based as it was on events that occurred almost two years earlier, well outside the statutory 300-day limit.

In the present litigation, Perez bases her Title VII claims against DAS on a more recent recurrence of Cosgrove's denying her inclusion on the examination list, this time on July 22, 2011. That event postdates her original CHRO complaint, but preceded her amendment to the complaint on September 4, 2012 by more than 300 days. Hence, even had Perez wished to charge DAS with discrimination for the later event, that later charge would have been untimely, given the date on which she amended her CHRO complaint to include DAS as a respondent.[7]

Objection to a plaintiff's failure to exhaust administrative remedies can be waived. See Francis, 235 F.3d at 767-68 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982)). However, exhaustion through the EEOC remains "an essential element of Title VII's statutory scheme," and defendants may insist on a plaintiff's compliance. Id. at 768 (citation and internal quotation marks omitted). Defendants' Motion to Dismiss clearly establishes the absence of waiver in this case.

Although Perez failed to exhaust administrative remedies with respect to her Title VII claim against DAS, the court may nevertheless consider that claim if it is "reasonably related" to her timely CHRO charge against DOC. See Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). The court determines, however, that the claim against DAS is not

---

[7] Notably, despite Perez's amendment to her CHRO complaint in September 2012, neither the CHRO Release of Jurisdiction in December 2012 nor the EEOC Right to Sue Letter in January 2013 mention DAS. See Compl. at 17-18. Both list DOC only. See id.

11

reasonably related to the timely CHRO charge against DOC. "A claim is reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Id. at 200-01. Perez did allege in her CHRO complaint against DOC, as she does in the present Complaint, that DOC cited as its basis for denying her promotion to Parole Officer I the fact that she was not on the examination list. See CHRO Compl. at ¶ 7; Compl. 24. However, Perez did not indicate there, as she does here, that her exclusion from the exam list was the result of discrimination by DAS.[8] Indeed, the substance of her CHRO charge against DOC is that Perez was not promoted by DOC, while other white, non-Hispanic Parole Officer Aides who were also not on the examination list were. See CHRO Compl. at ¶ 8. Given the CHRO charge against DOC, there was no reason to investigate whether DAS discriminated in denying Perez inclusion on that list. The only subject of the investigation was DOC's not promoting Perez while it did promote other, similarly situated employees.[9]

Because Perez's Title VII claim against DAS is untimely and not reasonably related to her CHRO charge against DOC, Counts One and Three of Perez's Complaint must be dismissed as to DAS. Counts One and Three remain, however, as to DOC.

---

[8] In her CHRO complaint, Perez alleged that, around 2008, DAS deemed her ineligible for placement on the examination list due to insufficient case management experience. CHRO Compl. at ¶ 10. Perez does not allege there, however, that DAS discriminated in that regard. In fact, as Perez pointed out, at that time, DAS counted her experience as Parole Officer Aide toward the six-year case management experience requirement, id., whereas DOC no longer did in March 2011, when she was, once again, not promoted, id. at ¶ 7. It is the March 2011 conduct by DOC, not the June 2008 conduct by DAS, that forms the clear basis of her CHRO charge.

[9] Perez argues that the court should consider the Title VII claim against DAS timely because DAS was on notice "as both [DOC and DAS] are integrally involved in the promotion process." Pl.'s Opp'n at 11. Doubtless DAS was involved in the CHRO investigation, given the fact that actions taken by DAS constituted part of the basis for DOC's decision not to promote Perez. Those actions by DAS that relate to the alleged discrimination by DOC remain proper subjects of discovery and liability in the present case, regardless of whether there is a separate Title VII claim against DAS.

### 2. Perez's Employer Is DOC

Additionally, Perez's Title VII claims are properly brought against her employer because Title VII makes it "an unlawful employment practice for an employer . . . to discriminate." 42 U.S.C. § 2000e-2(a) (emphasis added). Hence, the existence of an employer-employee relationship is a primary element of a Title VII claim. See Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006). The state has taken the position that DOC, not DAS, was Perez's employer. Perez does not claim otherwise.

Indeed, Perez seeks, not to substitute DAS for DOC, but to subject DAS separately to Title VII liability on the basis of DAS's alleged "interference" in her employment relationship. See Pl.'s Opp'n (Doc. No. 28) at 14-17.[10] This court recognizes the broad remedial purposes of Title VII. The Second Circuit, however, has declined to extend the meaning of "employer" for Title VII purposes beyond common-law agency principles. Gulino, 460 F.3d at 374 ("An expansive definition of 'employer' contravenes Supreme Court precedent and fundamental canons of statutory interpretation."). Although Gulino did not firmly shut the door to all "interference" claims, it put in question the viability of such claims in this Circuit, absent delegation of a core employer responsibility to a third party. See id. at 373-78.

Of course, the fact that DOC rather than DAS is Perez's employer does not immunize DOC from Title VII liability for actions taken by DAS as DOC's agent. It does mean, however, that Counts One and Three of Perez's Complaint may only proceed against DOC.

---

[10] In some cases, an individual may have a joint employer, rather than a single employer. See Gulino, 460 F.3d at 378 (outlining relevant factors). Perez, however, does not allege that DAS and DOC were "joint employers."

13

C. Service of Process

Typically, a plaintiff must serve the summons on all defendants within 120 days after filing a complaint. Fed. R. Civ. P. 4(m). Rule 4 provides that a state agency "must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Section 52-64 of Connecticut General Statutes provides for service on the state "by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford."

On March 8, 2013, plaintiff's counsel mailed a waiver of summons to DOC and DAS care of the Attorney General's office in Hartford. Neither federal nor state law permits service on state agencies to be made by requesting return of such a waiver. On March 28, counsel for all of the defendants[11] filed an appearance with the court. See Doc. No. 8. Having been granted an extension until July 1 to answer the Complaint, see Doc. No. 11, defense counsel filed its Motion to Dismiss on May 21, alleging insufficient service of process ten days before the end of the 120-day period for service, see Mot. to Dismiss (Doc. No. 15) at 2. By all appearances, plaintiff's counsel corrected the defect in service on July 3. See MacNeill Aff. (Doc. No. 28) at ¶ 5. Given the

---

[11] Attorney Lynch initially appeared on behalf of Cosgrove only in his official capacity but has since filed an appearance with the court on behalf of Cosgrove in his individual capacity as well. See Doc. No. 16.

14

absence of prejudice to DOC and DAS, the court determines the interest of justice is best served by granting <u>sua sponte</u> an extension of time to serve the two state agencies <u>nunc pro tunc</u> to July 3.

  D. <u>Jury Demand</u>

  In their Motion, defendants also move the court to strike Perez's jury demand with respect to her equitable claims under Title VII, including her claims for back pay and front pay. Perez's Seventh Amendment right to a jury trial extends to legal claims and to issues common to both the legal and equitable claims in the case. <u>See</u> <u>Robinson v. Metro-N. Commuter R.R. Co.</u>, 267 F.3d 147, 170 (2d Cir. 2001). Whether in the form of back pay or front pay, a lost wages award is a purely equitable remedy that does not trigger a Title VII plaintiff's jury right. <u>See</u> <u>Broadnax v. City of New Haven</u>, 415 F.3d 265, 271 (2d Cir. 2005).[12] Hence, Perez's jury demand is struck as to those issues exclusive to equitable relief under Title VII, including the award of lost wages.

  In her prayer for relief, however, Perez also seeks compensatory and punitive damages. Indisputably, under the Civil Rights Act of 1991, these are legal claims. <u>See</u>

---

[12] Perez argues incorrectly, and on the basis of scant pre-1991 case law outside this Circuit, that lost wages under Title VII are inherently in the nature of a legal remedy. <u>See</u> Pl.'s Opp'n at 19-20 (citing <u>Setser v. Novack Inv. Co.</u>, 638 F.2d 1137 (8th Cir. 1981); <u>Devore v. Edgefield Cnty. Sch. Dist.</u>, 68 F.R.D. 423, 425 (D.S.C. 1975)). With respect to back pay, the weight of authority is to the contrary. <u>See</u> 9 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2302 (3d ed. 2013). Moreover, the Second Circuit rejected Perez's position in <u>Broadnax</u>, which <u>starts</u> from the premise that lost wages are equitable and, thus, addresses the further question of whether submitting that issue to a jury is reversible error. 415 F.3d at 270-71. Although <u>Broadnax</u> was cited by defendants' Memorandum in Support of their Motion, plaintiffs did not address its clear holding on this issue.

  With respect to front pay, Perez's argument is on shakier ground. The position that such relief is legal rather than equitable appears plainly inconsistent with <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843 (2001). In <u>Pollard</u>, the Supreme Court concluded that, as the monetary equivalent of reinstatement, and as a remedy available to Title VII plaintiffs prior to the addition of compensatory and punitive damages in the Civil Rights Act of 1991, front pay does not fall within the meaning of "compensatory damages" in the Title VII context. <u>See</u> <u>id.</u> at 852-54. Indeed, for that reason, the Court held that front pay is not subject to the statutory cap on compensatory and punitive damages contained in section 1981a. <u>See</u> <u>id.</u> at 853-54.

42 U.S.C. § 1981a(c); Robinson, 267 F.3d at 157. Hence, defendants' Motion to Strike is denied as to compensatory and punitive damages and as to issues common to both the legal and equitable forms of relief available under Title VII.

## V. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss (Doc. No. 15) is **granted in part** and **denied in part**. Perez's Title VII claims against DOC in Counts One and Three and her section 1983 claim against Cosgrove in his individual capacity in Count Six remain. All other claims—the part of Counts One and Three pertaining to DAS; Counts Two, Four, and Five in their entirety; and the part of Count Six pertaining to Cosgrove in his official capacity—are dismissed. The court also strikes Perez's jury demand with regard to her equitable claims under Title VII, including the award of lost wages. With regard to compensatory and punitive damages and all issues pertaining thereto under Title VII, Perez's jury demand remains.

Because there are no outstanding counts against DAS, DAS's Motion to Stay Discovery (Doc. No. 36) is **denied** as moot.

**SO ORDERED.**

Dated at New Haven, Connecticut this 4th day of September, 2013.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge